# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOHNSON SEWER AND DRAIN )
CONTRACTORS, INC. )
T/A ROTO-ROOTER, )
)
    Plaintiff, )
)   C.A. No. S22C-09-025 MHC
      v. )
)
GINA GAMBARDELLA and MARCUS )
A SKINNER, )
)
      Defendants. )

## OPINION & ORDER

Submitted:  March 20, 2025
Decided:  June 24, 2025

Daniel A. Griffith, Esquire, Whiteford, Taylor & Preston, LLC, 405 N. King Street, Suite 500, The Renaissance Center, Wilmington, DE  19801

Gina Gambardella, *Pro Se*, 30099 Stage Coach Circle, Milford, DE  19963

**CONNER, J.**

Plaintiff Johnson Sewer and Drain Contractors, Inc. t/a Roto Rooter has moved for summary judgment against Defendant Gina Gambardella over a contract dispute for services performed on a house in Milford, Delaware (the "Property"). The Property is deeded to Defendant Marcus A. Skinner but Defendant Gina Gambardella currently resides in the house alone.

## FACTS

In October of 2021, Defendant Gambardella returned from a vacation to find the Property flooded from a septic overage.[1] Through her insurance with Allstate, Defendant Gambardella retained a company, The Restoration Guys ("TRG"), to repair damage and remove items from her home.[2] TRG placed the items in on-site storage units known as "PODS" to be cleaned.[3] Defendant Gambardella testified that TRG failed to clean the items put into the PODS, lost or destroyed items, and otherwise failed to properly perform under the contract.[4] Ultimately, after prodding by Defendant Gambardella, Allstate terminated TRG from the project.[5]

---

[1] Pl. Johnson Sewer and Drain Contractors, Inc.'s Mot. For Summ. J. Ex. H at 31:2–11.
[2] *Id.* at 35:20–23, 37:5–9.
[3] *Id.* at 44:16–19.
[4] *Id.* at 44:16–45:8.
[5] *Id.* at 47:2–12.

Plaintiff was hired to work on the Property after TRG was fired. The Court has been provided with three documents signed in connection with this litigation dispute.

First, Plaintiff and Defendant Gambardella signed an agreement dated February 28, 2022, titled "Water Extraction Agreement."[6] The Water Extraction Agreement does not define the scope of services, but instead cites a separate document known as the Emergency Work Authorization that specifies the water extraction services to be provided.[7] This Court has not been provided with the Emergency Work Authorization or any other document itemizing the work performed by Plaintiff. Under Section 5(c)(iii), "[w]ithin 10 days after [Defendant Gambardella's] receipt of the settlement payment from [her] insurance carrier, [she] will pay [Plaintiff] the remaining amount due, including any amount not covered by the insurance."[8]

Second, on March 31, 2022, Defendant Gambardella signed a one-page document with Plaintiff's letterhead (the "Storage Liability Release") which noted that Plaintiff did not have access to the PODS that TRG left behind.[9] The Storage Liability Release explained Plaintiff would assume billing responsibilities for the

---

[6] Pl. Johnson Sewer and Drain Contractors, Inc.'s Mot. For Summ. J. Ex. A.
[7] *Id.* at § 1(a).
[8] *Id.* at § 5(c)(iii).
[9] Pl. Johnson Sewer and Drain Contractors, Inc.'s Mot. For Summ. J. Ex. B.

3

units via a transfer of custody from TRG until Plaintiff reached substantial completion of the services for which Plaintiff was contracted, then transfer billing responsibilities to Defendant Gambardella.[10]

Third, the parties signed a document titled Certificate of Satisfaction and Direct Payment Authorization (hereinafter "Certificate of Satisfaction") dated May 9, 2022.[11]  This document reads:

> I acknowledge that water extraction, structural drying and or Microbial remediation services provided by [Plaintiff] at the [Property], have been completed to my satisfaction and that payment is now owed to [Plaintiff].  I Further [sic] certify that [Plaintiff] has furnished all labor and material for the services as specified in the "Emergency Work Authorization."  I hereby authorize [Plaintiff] to invoice my insurance carrier directly and authorize the insurance carrier to make payment directly to [Plaintiff.]  I understand and agree that the deductible and any shortfalls in insurance coverage are my responsibility and are owed to [Plaintiff] on or before the 10th day after receipt of settlement payment from your insurance carrier.[12]

Although Defendant claims she does not remember signing the document,[13] Defendant Gambardella has acknowledged her signature is on the Certificate of Satisfaction[14] and she has no evidence that the signature was forged.[15]

---

[10] *Id.*
[11] Pl. Johnson Sewer and Drain Contractors, Inc.'s Mot. For Summ. J. Ex. G.
[12] *Id.*
[13] Pl. Johnson Sewer and Drain Contractors, Inc.'s Mot. For Summ. J. Ex. H at 74:7–8.
[14] *Id.* at 73:17–74:10.
[15] *Id.* at 78:6–8.

## PROCEDURAL POSTURE

Plaintiff filed its original complaint on September 29, 2022. On December 1, 2022, the complaint was amended to add Defendant Skinner. After much delay, Defendant Gambardella finally answered the complaint on May 5, 2023. However, Defendant Gambardella's answer did not respond to all allegations in Plaintiff's complaint. Thus, on July 7, 2023, this Court ordered that Defendant Gambardella admit all allegations to which she failed to respond. One of these admissions is paragraph 10, which states: "On or about April 8, 2022, Roto-Rooter completed its mold remediation and contents cleaning services on the Property." After retaining Dean Campbell, Esquire, Defendant Gambardella submitted an amended answer and counterclaim on December 18, 2023, which still noted the court-ordered admissions.

Plaintiff's complaint as amended on December 1, 2022, alleges four counts, only one of which, Quantum Meruit, is against Defendant Marcus A. Skinner. Default judgment was entered against Defendant Skinner on June 2, 2023. According to Defendant Gambardella's deposition, Defendant Skinner no longer lives in the house and signed a quitclaim deed in 2019 which was apparently not recorded.[16] Defendant Gambardella also testified that Defendant Skinner is aware of the default judgment and told her to handle it.[17]

---

[16] Pl. Johnson Sewer and Drain Contractors, Inc.'s Mot. For Summ. J. Ex. H at 13:24–15:23.
[17] *Id.* at 21:3–6.

As to the three remaining counts against Defendant Gambardella, Count I is breach of contract for failing to pay Plaintiff for its services. Count II is breach of contract for failure to pay within ten days of Defendant Gambardella receiving the check from Allstate. Count III is for conversion, claiming Roto-Rooter had a possessory right to the funds which Allstate provided Defendant Gambardella and she deprived Plaintiff of that possessory right by wrongfully withholding those funds.

On March 14, 2024, the parties stipulated that mediation would be conducted prior to May 31, 2024.[18] Mediation never occurred. Instead, the parties filed dispositive motions and other motions for the Court's consideration. On September 19, 2024, the Court advised that no further court action would occur until mediation was conducted in good faith.[19] On March 11, 2025, Dean Campbell, Esquire, filed a Motion to Withdraw as counsel.[20] In the Motion he noted that mediation was scheduled for March 28, 2025. On March 21, 2025, the Motion to Withdraw was granted.[21] The mediation did not occur due to Defendant Gambardella failing to pay her portion of the fee.[22] On March 20, 2025, the Court docketed a *Pro Se* request by Defendant Gambardella to bypass mediation due to hardship.[23] On April 24, 2025,

---

[18] D.I. 47
[19] D.I. 66
[20] D.I. 73
[21] D.I. 76
[22] D.I. 75
[23] D.I. 77

Defendant Gambardella advised the Court of her intention to proceed *Pro Se*.[24] The Court can only conclude that Defendant has continually engaged in acts of delay throughout the entire process. The final act is Defendant Gambardella's refusal to engage in the mediation which she agreed to on March 14, 2024. Due to Defendant Gambardella's conduct, the Court is compelled to rule on Plaintiff's Motion for Summary Judgement.

Plaintiff's Motion for Summary Judgment against Defendant Gambardella alleges that it is undisputed that Plaintiff performed work on the Property, that Defendant Gambardella signed the Water Extraction Agreement, Storage Liability Release, and Certificate of Satisfaction, and that she is withholding the funds she received from Allstate. Plaintiff alleges that Defendant Gambardella was contractually and legally obligated to disburse those funds in accordance with the Water Extraction Agreement, Storage Liability Release, and Certificate of Satisfaction, and her failure to do so was a breach of contract.

Defendant argues that there are two issues of fact that preclude summary judgment: (1) the scope of the contract, both as written and performed, and (2) that Plaintiff fails to specify its exact damages in Plaintiff's motion for summary judgment.

---

[24] D.I. 79

## Standard of Review

Under Superior Court Civil Rule 56, the burden of proof on a motion for summary judgment falls on the moving party to establish that ". . . there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[25] If this initial burden is satisfied, then the burden shifts to the non-moving party to establish the existence of one or more genuine issues of material fact.[26] All facts and reasonable inferences must be considered in a light most favorable to the non-moving party.[27] However, there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.[28] If the evidence is merely colorable or not significantly probative, summary judgment may be granted.[29]

## Analysis

a. *Plaintiff is entitled to summary judgment as to the liability issue of the breach of contract claims.*

---

[25] Super. Ct. Civ. R. 56(c); *see e.g.*, *Quality Elec. Co., Inc. v. E. States Constr. Serv., Inc.*, 663 A.2d 488 (Table) (Del. 1995).

[26] Super. Ct. Civ. R. 56(e); *see e.g.*, *Heasley v. Allstate Prop. and Cas. Ins. Co.*, 2022 WL 951259 (Del. Super. Mar. 28, 2022).

[27] *Heasley v. Allstate Prop. and Cas. Ins. Co.*, 2022 WL 951259 at *2 (Del. Super. Mar. 28, 2022) (citing *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986)).

[28] *Harmony Mill Ltd. P'ship v. Magness*, 1990 WL 58149, at *3 (Del. Super. May 1, 1990).

[29] *Id.*

Although Defendant Gambardella does not necessarily recall signing all three documents, there is no genuine dispute that her signature is on the Water Extraction Agreement, Storage Liability Release, and Certificate of Satisfaction. Defendant admitted that the work was completed. There also is no genuine dispute that Defendant Gambardella withheld the funds she received from Allstate to pay Plaintiff and withheld them for more than ten days, which is a direct violation of her payment obligations under Section 5(c)(iii) of the Water Extraction Agreement.

Defendant Gambardella challenges the scope of the Water Extraction Agreement by highlighting limitations provisions in the agreement which are inconsistent with the services Plaintiff claims were within the scope of the agreement. Section 2(a) states that " [Plaintiff's] sole responsibility is to extract existing water and to dry wet floor coverings and structural components. . . . We are not responsible under this agreement to fix, repair or replace damaged property."[30] Section 2(c) provides "[Plaintiff is] not being retained under this agreement to address mold. . . ."[31] Meanwhile, Plaintiff specifically refers to its performance as mold remediation and contents cleaning services in its complaint and motion for summary judgment.

---

[30] Pl. Johnson Sewer and Drain Contractors, Inc.'s Mot. For Summ. J. Ex. A at § 2(a).
[31]

9

Defendant Gambardella also challenges the operability of the Certificate of Satisfaction by saying that the document was signed prematurely. Defendant Gambardella argues that the work had not been scheduled or started as of May 9, 2022. This runs contrary to her admission of paragraph 10 of the complaint: "On or about April 8, 2022, Roto-Rooter completed its mold remediation and contents cleaning services on the Property."

"Judicial admissions are recognized under Delaware law. Judicial admissions are not a means of evidence but a waiver of all controversy and therefore a limitation on the issues."[32] Judicial admissions operate as an unassailable statement of fact that narrows the triable issues in the case.[33] However, judicial statements ". . . are limited to factual matters in issue, not statements of legal theories or conceptions."[34] Thus, judicial admissions generally do not apply to contractual interpretation.[35]

The Court cannot allow Defendant Gambardella to challenge the validity of the Certificate of Satisfaction by reversing her admission of paragraph 10 of the complaint. Considering this is the only challenge Defendant Gambardella has for

---

[32] *Ervin v. Vesnaver*, 2000 WL 1211201, at *2 (Del. Super. June 20, 2000) (citations omitted).
[33] *BE & K Eng'g Co., LLC v. Rocktenn CP, LLC*, 2014 WL 186835, at *7 (Del. Ch. Jan. 15, 2014) (quoting *Merrit v. United Parcel Serv.*, 956 A.2d 1196, 1202 n.18 (Del. 2008)).
[34] *InterMune, Inc. v. Harkonen*, 2023 WL 3337212, at *21 (Del. Ch. May 10, 2023) (quoting *Levinson v. Del. Comp. Rating Bureau, Inc.*, 616 A.3d 1182, 1186 (Del. 1992)).
[35] *Id.*

the Certificate of Satisfaction, this Court finds no genuine dispute to the validity of the Certificate of Satisfaction.

Defendant Gambardella's challenges in interpreting the scope of the Water Extraction Agreement are not similarly barred. The scope of the Water Extraction Agreement being defined by an outside document referred to as the Emergency Work Authorization and the limitations in Section 2 potentially overlapping with the services described are both unresolved factual issues in interpreting the scope of the Water Extraction Agreement.

However, while there are genuine factual issues regarding the scope of the Water Extraction Agreement, these issues are not material to the determination of liability. Defendant Gambardella's signing of the Certificate of Satisfaction followed by intentionally ignoring Plaintiff's attempts at follow-up communication are uncontested facts which ultimately entitle Plaintiff to summary judgment. The Certificate of Satisfaction and subsequent ignoring of Plaintiff's communication estop Defendant from reversing her position that she was satisfied with the work performed, barring her from challenging that Plaintiff underperformed or defectively performed. The Certificate of Satisfaction and subsequent ignoring of Plaintiff's communications also serve as an acquiescence to any of Plaintiff's performance that potentially exceeded the scope of the original contract. Ultimately, the Certificate of Satisfaction and Defendant Gambardella's subsequent actions bar her from

11

challenging the scope of Plaintiff's performance under the Water Extraction Agreement. As there are no genuine disputes of material facts, summary judgment for liability as to Counts I and II for breach of contract should be granted in Plaintiff's favor.

Defendant Gambardella's own testimony was that she knew that the Plaintiff planned to stop working on the project unless it got paid for the work already performed.[36] Defendant Gambardella then signed the Certificate of Satisfaction. which states that she was satisfied with the work performed and that payment is owed.[37] Defendant Gambardella testified that after the Certificate of Satisfaction was signed, she actively ignored Plaintiff when Plaintiff followed up on payment.[38] Defendant Gambardella then mentions one phone call in June telling Plaintiff that ". . . outstanding balances are paid when the work is completed," then ignoring Plaintiff's further follow ups to resolve the situation.[39] Defendant Gambardella explained "If I saw an email come in from [Plaintiff] at this point in July [2022], I probably didn't even open it up."[40] Defendant Gambardella next explained that she did not communicate with anyone regarding the matter for nine months while her

---

[36] Pl. Johnson Sewer and Drain Contractors, Inc.'s Mot. For Summ. J. Ex. H at 63:19–64:14.
[37] Pl. Johnson Sewer and Drain Contractors, Inc.'s Mot. For Summ. J. Ex. G.
[38] Pl. Johnson Sewer and Drain Contractors, Inc.'s Mot. For Summ. J. Ex. H at 88:9–20; 105:2–14.
[39] *Id.* at 105:2–14; 115:5–116:5.
[40] *Id.* at 116:20–21.

insurance company was ignoring her.[41]  Defendant Gambardella then left the basement with no air conditioning for two years and the mold worsened.[42] Subsequently, she had several other contractors perform $100,000 worth of work on the Property.[43]

Estoppel and acquiescence are equitable defenses which are available to both equitable and legal claims,[44] and thus the Delaware Superior Court has asserted jurisdiction over such claims.[45]

Estoppel arises when a party to a transaction by word, deed, or silence conducts themself in such a manner that the law forbids enforcement of a claim arising but for the estoppel.[46]  Estoppel applies when a party lacks knowledge and the means to acquire knowledge of the truth of the facts in question, relies upon the conduct of the other party, and suffers a prejudicial change of position in consequence thereof.[47]

To the degree Defendant Gambardella challenges that Plaintiff underperformed or defectively performed under the contract, Defendant

---

[41] *Id.* at 119:23–120:14.

[42] *See id.* at 129:19–113:12.

[43] *Id.* at 121:23–122:18.

[44] *See XRI Inv. Hldgs. LLC v. Holifield*, 283 A.3d 581, 637–641 (Del. Ch. 2022).

[45] *See e.g.*, *Harmony Mill Ltd. P'ship v. Magness*, 1990 WL 58149, at *5 (Del. Super. May 1, 1990); *Mizel v. Xenonics, Inc.*, 2007 WL 4662113, at *7–8 (Del. Super. Oct. 25, 2007).

[46] *Harmony Mill Ltd. P'ship v. Magness*, 1990 WL 58149, at *5 (Del. Super. May 1, 1990) (citing *Timmons v. Campbell*, 111 A.2d 220 (Del. Ch. 1955)).

[47] *Id.* (citing *Wilson v. Am. Ins. Co.*, 209 A.2d 902, 904 (Del. 1965)).

Gambardella is estopped from reversing her own signed satisfaction with the work. Defendant Gambardella signed the Certificate of Satisfaction stating that she was satisfied with the work performed. She then ignored Plaintiff's follow-ups, minus one phone call where she said to finish the work without further explanation as to what work needed to be finished. Defendant Gambardella then allowed the mold situation to worsen for years as she had several other contractors perform $100,000 worth of work. Plaintiff had no knowledge of what work Defendant Gambardella had contested, relied upon Defendant Gambardella's signature and subsequent lack of communication, and thus had no opportunity to assess the work with which Defendant Gambardella was dissatisfied before years of Defendant Gambardella neglecting the basement and hiring other contractors with no accounting for Plaintiff's unfinished work. At this point in time, Plaintiff is prejudiced by Defendant Gambardella's inconsistent satisfaction and dissatisfaction. Plaintiff no longer can reasonably remedy any defect of its performance or even assess what possible damages Defendant Gambardella would have suffered separate from the worsening preexisting basement issues and separate from work performed by TRG or the contractors hired after Plaintiff. Defendant Gambardella agreed that the work was completed to her satisfaction and thus she is estopped from reversing her position by claiming Plaintiff underperformed or defectively performed under the contract.

14

Acquiescence applies where a complainant has full knowledge of their rights and the material facts and either (1) remains inactive for a considerable time; (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved.[48] Applying acquiescence requires a fact-intensive analysis, often depending on evaluating the knowledge, intention and motivation of the acquiescing party.[49]

To the degree Defendant Gambardella argues that Plaintiff performed beyond the scope of the agreement, her subsequent actions acquiesced to that overperformance. Defendant Gambardella remained inactive for a considerable time while consciously ignoring Plaintiff's communications. Defendant Gambardella also freely signed the Certificate of Satisfaction which recognizes and approves of the work as actually performed by Plaintiff, overperformance or not. These actions also are inconsistent with the subsequent repudiation which led Plaintiff to believe performance had been approved. Defendant Gambardella's behavior does not just satisfy one of the three scenarios in which acquiescence applies, her behavior satisfies all three. Thus, to the degree Defendant Gambardella contends that Plaintiff

---

[48] *Mizel v. Xenonics, Inc.*, 2007 WL 4662113, at *7 (Del. Super. Oct. 25, 2007) (quoting *Bakerman v. Sidney Frank Importing Co., Inc.*, 2006 WL 3927242, at *17 (Del. Ch. Oct. 10, 2006, revised Oct. 16, 2006)).
[49] *Julin v. Julin*, 787 A.2d 82, 84 (Del. 2001).

performed beyond the scope of the original agreement, she acquiesced to that performance.

  b. *The parties should brief the Court as to the final calculations of damages.*

Defendant Gambardella's second contention is that there are still disputes as to the damages calculated. Rule 56(c) of the Delaware Superior Court Civil Rules states: "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Plaintiff has not provided the Emergency Work Authorization defining the scope of services provided. Additionally, Plaintiff has pleaded specific damages in its complaint but has not provided detailed accounting of those damages. Although Defendant Gambardella is liable, Plaintiff still has the burden to establish the damages in this case.

Thus, because there is no genuine issue as to material facts as to liability, and because summary judgment may be rendered as to liability without determining damages, summary judgment is **GRANTED IN PART** as Defendant Gambardella is liable to Plaintiff as to Counts I and II. The parties are ordered to brief damage calculations. Plaintiff shall file their opening brief on or before July 16, 2025.

16

Defendant Gambardella shall file her answering brief on or before August 6, 2025. Plaintiff shall file any reply brief by August 20, 2025.

    c. *Plaintiff's conversion claim fails to state a separate cause of action and is dismissed.*

When a plaintiff's claim arises solely from a breach of contract, the plaintiff "generally must sue in contract, and not in tort."[50] "Thus, in order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract."[51] The exception is for the return of identical money, which applies when the money can be described or identified as a specific chattel, not when the party seeking payment could be satisfied by the payment of money generally.[52]

Here, Plaintiff alleges conversion in Count III but has not identified any reason why it has any possessory right to the funds which Allstate provided Defendant Gambardella except due to Plaintiff's contractual performance. Furthermore, the identical money exception does not apply, as the money claimed under Count III is not a specific chattel and Plaintiff would be made whole by the payment of any money generally, not just the specific check Allstate provided

---

[50] *Kuroda v SPJS Holdings, L.L.C.*, 971 A.2d 872, 880, 889 (Del. Ch. 2009) (quoting *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. July 25, 2007)).
[51] *Id.*
[52] *Id.* at 890.

Defendant Gambardella. Since conversion is an inappropriate alternative pleading to Plaintiff's breach of contract claims, Plaintiffs fail to state a claim as to Count III. Thus, Count III is **DISMISSED**.

## CONCLUSION

Summary Judgment is **GRANTED IN PART** finding that Defendant Gambardella is liable as to Counts I and II. The parties shall brief the Court regarding damages as outlined. Count III is **DISMISSED**.

**IT IS SO ORDERED.**

/s/ *Mark H. Conner*
Mark H. Conner, Judge


oc:     Prothonotary

18